IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHARLES E. JORDAN, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. _____ |
| v. ) | |
| ) | |
| GUARANTEED AUTO, INC., ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

### INTRODUCTION

1. CHARLES E. JORDAN, Plaintiff, brings this action for actual damages, emotional damages, statutory damages, and attorney's fees and costs against Defendant, GUARANTEED AUTO, INC., for deceptively charging interest rates above 92.87%; violating the Truth in Lending Act ("TILA"); the Georgia Motor Vehicle Sales Finance Act ("MVSFA"); and the Georgia Fair Business Practices Act ("FBPA").

### JURISDICTION & VENUE

2. This Court has jurisdiction over Plaintiff's TILA claim under 15 U.S.C. § 1640(e), and 28 U.S.C. §§ 1331 and 1337, and his state law claims under 28 U.S.C. § 1367.

3. Venue is appropriate in the Northern District of Georgia because the defendant resides within the judicial district, and a substantial part of the events giving rise to the claim occurred within the district. See 28 U.S.C. § 1391(b)(1)-(2).

## PARTIES

4. Plaintiff **CHARLES E. JORDAN** is a resident of Georgia, in the City of Rex.

5. Defendant **GUARANTEED AUTO, INC.** is a Georgia corporation doing business in Fulton County, Georgia, which includes the City of Atlanta. Defendant may be served with process through its registered agent, Nick Hart, at 7295 Roswell Rd., Atlanta, Georgia 30328.

6. At all relevant times hereto, Defendant regularly extended or offered to extend consumer credit for which a finance charge is or may be imposed or which, by written agreement, is payable in more than four installments, and is the person to whom the transaction which is the subject of this action is initially payable, making Defendant a creditor within the meaning of TILA, 15 U.S.C. § 1602(f) and Regulation Z § 226.2(a)(17).

FACTS

7. On or around November 11, 2012, Mr. Jordan entered into a retail installment contract for the purchase of a 2004 GMC Yukon XL (the "Vehicle") with Defendant. Mr. Nick Hart negotiated the transaction with Mr. Jordan (the "Transaction").

8. In the process of negotiating the Transaction, Mr. Hart assured Mr. Jordan the car had passed the required emissions testing.

9. Mr. Jordan relied on Mr. Hart's assurances when deciding to consummate the Transaction.

10. The amount financed of the Vehicle was calculated in the contract as follows:

| | |
|---|---|
| Cash Price | $8,884.93 |
| Sales Fee | 499.00 |
| Title Fee | 38.00 |
| Unidentified Charge | 3,350.00 |
| Total down payment | - 1,0000 |
| Trade-In | - 3,500.00 |
| **Total** | **$8,271.93** |

(See Retail Installment Contract, attached hereto as "Exhibit A.")

3

11. The Sales Fee in the preceding paragraph is described in more detail in the Bill of Sale. According to that document, the sales fee "represents costs and *profit to the dealer…*" (Bill of Sale, attached hereto as "Exhibit B.") (emphasis added).

12. Towards the cash price, Mr. Jordan made an initial down payment of $1,000.00.

13. In addition, Mr. Jordan traded in his 2001 Dodge Ram 1500, which was fully functioning at the time of the transaction. Upon information and belief, the fair market value for the Dodge Ram was $6,995.00. However, Defendant credited Mr. Jordan $3,500.00 for the trade-in.

14. Mr. Jordan was scheduled to make 66 bi-weekly payments of $175.00 beginning November 25, 2012, with an additional last payment of $72.55 on June 7, 2015.

15. The parties' contract also contained the following TILA disclosures:

| | |
|---|---|
| APR | 28.00% |
| Finance Charge | $3,350.62 |
| Amount Financed | $8,271.93 |
| Total of Payments | $11,622.55 |
| Total Sales Price | $16,122.55 |

(Exhibit A.)

16. One day after signing the contract, Mr. Jordan noticed the itemization of the amount financed included an unidentified fee for $3,350.00.

17. Mr. Jordan returned to the car dealership and demanded the fee be removed. The dealership refused, stating it was the "finance charge."

18. Because the parties understood that Mr. Jordan hoped to pay off the balance once he received his tax refund, Mr. Hart promised to refund $2,400.00 of the "finance charge" when Mr. Jordan paid off the contract. Mr. Hart indicated this promise on the parties' documents. (See Bill of Sale, Exhibit B.)

19. After purchasing the Vehicle, Mr. Jordan tried to register it with the Georgia Department of Revenue. However, his registration was denied because the Vehicle did not have a valid emissions certificate.

20. Mr. Jordan made two payments on the Transaction. Mr. Jordan's third installment was due on December 23, 2012.

21. Mr. Jordan discovered he would not receive his paycheck until after Christmas, so he called the Defendant to tell them he could not pay until December 27, 2013. Defendant orally agreed to extend the payment deadline accordingly. However, on December 26, 2012, Defendant repossessed Mr. Jordan's car.

22. Mr. Jordan received no notice of repossession containing a notice of

his right to redeem or his right to a public sale.

23. Mr. Jordan received no notice of disposition prior to Defendant selling the car.

## COUNT ONE: 15 U.S.C. § 1640
## TRUTH IN LENDING ACT

24. Plaintiff incorporates by reference paragraphs 1 – 7, 10 – 17 of this Complaint as if fully restated herein.

25. The Transaction is covered by TILA, codified at 15 U.S.C. § 1601 et seq. See 12 C.F.R. 226.1(c)(1). Specifically, Defendant offered or extended credit to consumers, such offering or extension of credit is done regularly by Defendant, this credit transaction is subject to a finance charge or is payable by a written agreement in more than four installments, and the credit extended was primarily for personal, family, or household purposes.

26. TILA, under its accompanying Regulation Z, defines "finance charge" as "the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4(a). See also 15 U.S.C. § 1605(a).

27. The disclosure statement issued with this consumer credit transaction violated the requirements of TILA and Regulation Z in at least the following respects:

A. The TILA "amount financed" was overstated by $3,849.00. Included in the "amount financed," disclosed for TILA purposes, was a $499.00 charge that included "profits to the dealership." The second charge is an unidentified charge of $3,350.00, which Defendant's agent described as a finance charge to Plaintiff. Because both of these fees increased the cost to Plaintiff of obtaining credit, the fees should have been included in the TILA "finance charge," rather than in the TILA "amount financed." Thus, the true "amount financed" in the Transaction was $4,422.93, not the disclosed $8,271.93.

B. For reasons shown in subparagraph (A) above, the TILA "finance charge" was understated by $3,849.00. Thus, the true "finance charge" in the Transaction was $7,199.62, not the disclosed $3,350.62.

C. For reasons shown in subparagraphs (A) and (B) above, the TILA "APR" disclosure was understated by nearly 6,500 basis points. The true APR in the Transaction was 92.87%, not the disclosed 28.00%.

28. Mr. Jordan would not have entered the contract with Defendant if the 92.87% APR had been properly disclosed.

29. As a result of Defendant's TILA violations, Plaintiff suffered actual damages, in an amount to be established at trial.

30. Defendant is further liable to Plaintiff for $2,000.00 in statutory damages, attorney's fees, and litigation expenses under 15 U.S.C. § 1640.

## COUNT TWO: O.C.G.A. § 10-1-38(c)
## GEORGIA MOTOR VEHICLE SALES FINANCE ACT

31. Plaintiff incorporates by reference paragraphs 1 – 7, 10 – 17, 22 – 23 of this Complaint as if fully restated herein.

32. Defendant is engaged in the business of selling motor vehicles to retail buyers in retail installment transactions, and is thus a "retail installment seller" under the Motor Vehicle Sales Finance Act ("MVSFA") at O.C.G.A. § 10-1-31(a)(10).

33. The Transaction resulted in an instrument creating a purchase money security interest in the Vehicle, thus constituting a "retail installment contract" under O.C.G.A. § 10-1-31(a)(9).

34. The used Vehicle at issue in the Transaction is a covered "motor

vehicle" as defined by O.C.G.A. § 10-1-31(a)(4).

35. For a used car older than four years, the maximum finance charge allowed under the MVSFA is $17.00 per $100.00 per year (i.e., a rate of 17%), computed on the "unpaid balance," as defined by Regulation Z. See O.C.G.A. § 10-1-33. For this action, the "unpaid balance" is the same as the TILA "amount financed."

36. As shown above in Count One, the true "amount financed" in the Transaction was $4,422.93. (See Compl. ¶ 20)

37. The term of the Transaction is 2.568 years.

38. Therefore, the maximum finance charge permitted by the MVSFA for the Transaction is $1,930.87 (17% maximum rate x $4,422.93 amount financed x 2.568 years = $1,930.87).

39. Defendant imposed a true finance charge of $7,199.62 in the Transaction, thereby exceeding the MVSFA maximum by $5,268.75.

40. Mr. Jordan did not agree to a finance charge of $7,199.62.

41. Defendant willfully imposed the excessive charge under a general policy that affected not only Mr. Jordan, but other customers purchasing automobiles on credit.

42. The total amount of the time price differential imposed in the Transaction is $7,199.62.

43. Defendant also failed to comply with the MVSFA deficiency notice provision at O.C.G.A. § 10-1-36 by failing to send the required notice via registered or certified mail or statutory overnight delivery within ten days of repossession, advising Plaintiff of his right of redemption and his right to demand a public sale.

44. Mr. Jordan seeks a declaratory judgment that as a result of imposing an excessive finance charge in the Transaction, Defendant cannot seek any finance charge, delinquency charge, or collection charge in connection with the Transaction per O.C.G.A. § 10-1-38(b).

45. Mr. Jordan seeks a declaratory judgment that as a result of Defendant's failure to send a deficiency notice in the Transaction, Defendant is barred from seeking any claim for deficiency against him per O.C.G.A. § 10-1-36(c).

46. Because Defendant's imposition of an excessive finance charge was willful, Defendant is liable to Mr. Jordan for twice the time price differential, which is $14,399.24 ($7,199.62 time price differential x 2 = $14,399.24) per

O.C.G.A. § 10-1-38(c).

## COUNT THREE: O.C.G.A. § 11-9-625
## GEORGIA COMMERCIAL CODE

47.  Plaintiff incorporates by reference paragraphs 1 – 7, 20 – 23 of this Complaint as if fully restated herein.

48.  After a default on a secured debt, the creditor must issue a notice of intended disposition of the collateral, which is required to contain certain statements regarding the borrower's rights. See O.C.G.A. §§ 11-9-611 & 11-9-613-614.

49.  A creditor's noncompliance with these notice requirements entitles the debtor to actual and statutory damages per O.C.G.A. § 11-9-625.

50.  Defendant failed to send Plaintiff any notice of the sale of the repossessed Vehicle.

51.  Mr. Jordan suffered actual damages as a result of Defendant's failure to comply with the notice requirements of the Georgia Commercial Code.

52.  As a result of Defendant's failure to comply with the Georgia Commercial Code, Plaintiff seeks actual damages in an amount to be determined at trial, as well as statutory damages under O.C.G.A. § 11-9-625 in an amount not

less than the time price differential in the Transaction, $7,199.62, plus 10% of the cash price of the Vehicle, $888.49 ($8,884.93 cash price x 10%).

## COUNT FOUR: O.C.G.A. § 10-1-399
## GEORGIA FAIR BUSINESS PRACTICES ACT

53.   Plaintiff incorporates by reference paragraphs 1 – 21, and 31 – 46 of this Complaint as if fully restated herein.

54.   Defendant's actions were made in the consumer marketplace, i.e. the actions have or have had a potential for harm to the general consuming public.

55.   In its conduct with Mr. Jordan, Defendant committed multiple violations of the Fair Business Practices Act ("FBPA"). Specifically, the following conduct is unfair or deceptive:

   A.   Inducing Mr. Jordan to trade in his vehicle, and enter a new retail installment contract by falsely representing to him that his APR would be a far lower 28%;

   B.   Charging Mr. Jordan illegal interest rates above 92.87%, and thereby violating the MVSFA interest rate cap in O.C.G.A. § 10-1-33;

   C.   Deceiving Mr. Jordan by representing to him that the finance charge was only $3,350.00 with a 28% APR, when it was $7,199.63 with an

APR over 90%;

    D.    Concealing and/or misrepresenting the Vehicle's emissions certificate status when it sold Mr. Jordan a vehicle that did not have the required emissions certificate;

    E.    Selling Mr. Jordan a vehicle without a valid emissions certificate, in violation of O.C.G.A. § 12-9-54;

    F.    Promising to extend the deadline for Mr. Jordan's payment due December 23, 2012 in order to induce action on Mr. Jordan's part, but without intending to honor the promise.

56.    Plaintiff relied on the disclosed 28% APR when deciding to consummate the credit transaction with Defendant.

57.    Plaintiff relied on Defendant's compliance with Georgia law when deciding to trade in his car and purchase the Vehicle.

58.    Plaintiff relied on Defendant's misrepresentations about the emissions certificate when he decided to trade-in his car and purchase the Vehicle.

59.    Plaintiff relied on Defendant's misrepresentations about the payment deadline extension when he did not seek alternate ways to meet the December 23, 2012 payment deadline.

60.     The above FBPA violations were intentional. Defendant knew (a) about the finance charges it placed on the Transaction, (b) about the status of the Vehicle's emissions certificate, and (c) that it did not intend to honor its promise to extend Mr. Jordan's payment deadline.

61.     Defendant's actions were volitional, and Defendant had culpable knowledge of the nature of the acts.

62.     In compliance with O.C.G.A. § 10-1-399(b), on September 20, 2013, Mr. Jordan, through counsel, sent a written demand for relief to Defendant, reasonably describing Defendant's FBPA violations and the injury suffered.

63.     Defendant did not respond to the above demand in any manner.

64.     Because of Defendant's violations of the FBPA, Mr. Jordan is entitled to actual damages in an amount to be determined at trial.

65.     Because Defendant's violations of the FBPA were intentional, Mr. Jordan is also entitled to three times the actual damages as determined at trial per O.C.G.A. § 10-1-399(c).

66.     In addition, Defendant's actions authorize imposing punitive damages, under O.C.G.A. §§ 10-1-399(a), 51-12-5.1, in that they show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care

which would raise the presumption of a conscious indifference to consequences, and Mr. Jordan seeks such damages from Defendant.

67. Mr. Jordan is also entitled to reasonable attorney's fees and reimbursement of the expenses of litigation under O.C.G.A. § 10-1-399(d).

PRAYER FOR RELIEF

**WHEREFORE** Plaintiff prays that this Court:

(a) Under Count One, award actual damages, statutory damages of $2,000, and attorney's fees and litigation expenses to Plaintiff;

(b) Under Count Two, (1) declare that as the result of Defendant's violation of the MVSFA, Defendant cannot seek any finance charge, delinquency charge, or collection charge in connection with the Transaction, and (2) award statutory damages to Plaintiff for $14,399.24;

(c) Under Count Three, (1) declare that as the result of Defendant's violation of the Georgia Commercial Code, Defendant cannot seek the recovery of any deficiency balance, and (2) award actual damages in amounts to be determined at trial, as well as statutory damages of $14,399.24;

(d) Under Count Four, award to Plaintiff actual damages, treble damages, punitive damages, all in amounts to be determined at trial, plus attorney's fees and litigation expenses;

(e) Award Plaintiff costs of this action;

(f) SET THE MATTER FOR TRIAL BY JURY; and

(g)   Grant such other relief that is just and proper under the circumstances.

*/s/ Jon Erik Heath*
J. Erik Heath
Ga. Bar No. 940564
jeheath@atlantalegalaid.org
Elaine Poon
Ga. Bar No. 321308
elpoon@atlantalegalaid.org
John R. Bartholomew IV
Ga. Bar No. 257089
jrbartholomew@atlantalegalaid.org
Donald M. Coleman
Ga. Bar No. 177450
dmcoleman@atlantalegalaid.org

ATLANTA LEGAL AID SOCIETY, INC.
151 Spring Street NW
Atlanta, GA  30303
(404) 524-5811 (phone)
(404) 614-3997 (fax)

*Attorneys for Plaintiff*

CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that the foregoing has been prepared in Times New Roman (14 point) font, as approved by the Court in L.R. 5.1.B.

*/s/ Jon Erik Heath*
J. Erik Heath
Ga. Bar. No. 940564
Attorney for Plaintiff