IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHARLES E. JORDAN, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. |
| v . | ) | 1:13-cv-03703-WBH-JSA |
| | ) | |
| GUARANTEED AUTO, INC., | ) | Magistrate Judge |
| | ) | Justin S. Anand |
| Defendant. | ) | |

<u>BRIEF IN SUPPORT OF PLAINTIFF'S</u>
<u>MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

Guaranteed Auto lured Mr. Jordan into financing a used car purchase using deceitful disclosures that concealed illegal finance charges and a hidden APR of over 80%. When the car was eventually repossessed, Mr. Jordan did not receive any of the required notices of his redemption rights. Guaranteed Auto's unfair and deceptive practices were not isolated; they were systemic and have affected hundreds of Georgia consumers over the past several years. Guaranteed Auto's deceitful behavior entitles Mr. Jordan to statutory and actual damages on his claims under the Truth in Lending Act, 15 U.S.C. §§ 1601 <u>et seq.</u> ("TILA"), and supplemental state law claims.

FACTS

On or around November 11, 2012, Mr. Jordan purchased a 2004 GMC Yukon XL (the "Vehicle") from Guaranteed Auto. (Statement of Material Facts ("SMF") ¶ 3.) This transaction consisted of a retail installment contract and a bill of sale, resulting in a purchase money security interest in the Vehicle in favor of Guaranteed Auto. (SMF ¶ 8.)

The purchase price for the Vehicle was $8,884.93. (SMF ¶ 5.) Mr. Jordan made a down payment of $1,000.00, and was credited $3,500.00 for a trade-in vehicle. (SMF ¶¶ 6-7.) Mr. Jordan financed the remainder of the purchase price with Guaranteed Auto. (SMF ¶ 8.)

His retail installment contract contained Truth In Lending Disclosures ("TILA Disclosures"). According to these disclosures, the financing arrangement would cost him $3,350.62 in finance charges, which amounts to an APR of 28.000%. (SMF ¶ 17.) However, these finance charges excluded an unidentified fee in the amount of $3,350.00, which was buried elsewhere in the agreement. (SMF ¶¶ 12-13.)

Even though Guaranteed Auto had promised to allow Mr. Jordan to use his payday as the payment deadline, it declared him in default and repossessed his vehicle on December 26, 2012, just one day before his next paycheck. After

repossession, Guaranteed Auto sent no written notices to Mr. Jordan informing him of his right to redeem the vehicle. (SMF ¶¶ 27-28.) Both the repossessed vehicle and Mr. Jordan's trade-in vehicle were later resold by Guaranteed Auto, who charged the $3,350 fee to each of the subsequent customers. (SMF ¶¶ 30, 34.)

ARGUMENT

I. GUARANTEED AUTO'S DECEPTIVE FINANCING DISCLOSURES VIOLATE THE TRUTH IN LENDING ACT.

Guaranteed Auto violated TILA when it concealed an unidentified $3,350.00 fee from the finance charge for Mr. Jordan's used car purchase. As a result, Mr. Jordan received wildly inaccurate disclosures of the amount financed and APR, which prevented him from assessing the true (and extremely high) cost of credit for the transaction. This type of deceit and nondisclosure violates the core promise of TILA: the promotion of the "informed use of consumer credit." 12 C.F.R. § 226.1(b); see also 15 U.S.C. § 1601(a).[1] Furthermore, the inaccurate disclosures of the amount financed, finance charge, and APR entitle Mr. Jordan to statutory and actual damages. See 15 U.S.C. § 1640(a)(1) – (2).

---

[1] This transaction is subject to TILA because (1) Guaranteed Auto has extended credit to more than 25 consumers in 2011 and during the part of 2012 preceding the transaction, and (2) Mr. Jordan used the credit for personal, family, or household purposes. (SMF ¶¶ 1-3, 11); 15 U.S.C. §1602(f), (i).

**A.    Guaranteed Auto Under-disclosed the Finance Charge by Over Three Thousand Dollars.**

TILA requires the accurate disclosure of the "finance charge," often referred to as the "cost of credit," or the amount a consumer must pay the creditor in order to obtain financing.  Ralph J. Roner & Thomas A. Durkin, <u>TILA "Finance" and "Other" Charges in Open-End Credit: The Cost of Credit Principle Applied to Charges for Optional Products or Services</u>, 17 Loy. Consumer L. Rev. 137, 150 (2005).  This strict requirement "prohibit[s] creditors from circumventing TILA's objectives and burying the cost of credit in the price of goods sold."  <u>Rodash v. AIB Mortgage Co.</u>, 16 F.3d 1142, 1144-45 (11th Cir. 1994).  An inaccurate finance charge thus results in a claim for damages by the consumer.  15 U.S.C. § 1640(a).

1.    <u>The Unidentified Fee fits the statutory definition of a finance charge.</u>

A finance charge under TILA includes (1) any charge (2) payable directly or indirectly by the consumer (3) and imposed directly or indirectly by the creditor (4) as an incident to or condition of the extension of credit.  12 C.F.R. § 226.4(a).  This definition must be construed broadly and in favor of the consumer.  <u>See</u> <u>Bragg v. Bill Heard Chevrolet, Inc.</u>, 374 F.3d 1060, 1065 (11th Cir. 2004) (TILA is a remedial statute that must be interpreted liberally).

The first three prongs of the definition of finance charge are largely self-explanatory (and easily met here). "[A]ny cost charged by the creditor" is an "imposed" charge under this standard. 60 Fed. Reg. 62,764, 62,765 (Dec. 7, 1995); see also First Acadiana Bank v. Federal Deposit Ins. Corp., 833 F.2d 548, 550 (5th Cir. 1987) (attorneys' fees imposed by creditor are finance charges). Mr. Jordan's purchase documents show, and Guaranteed Auto's deposition confirms, that the Unidentified Fee was charged to Mr. Jordan directly by the creditor. (Ex. B-C; Deposition of Nick Hart (as Fed. R. Civ. Proc. 30(b)(6) witness for Guaranteed Auto, Inc.), Jun. 17, 2014 ("GA Deposition"), p. 29:15-22; p. 56:22-25; p 57:1-8; SMF ¶¶ 12-14.)

A charge meets the fourth prong of the definition if it is paid "as an incident to or condition of the extension of credit." 12 C.F.R. § 226.4. A fee that is charged to credit customers but not cash customers is a fee that is "incident to" or a "condition of the extension of credit." Compton v. Altavista Motors, Inc., 121 F. Supp. 2d 932, 937 (D. W. Va. 2005) ("Because the processing fee is mandatory for credit customers, but not for cash customers, it is a charge 'incident to' the extension of credit and, therefore part of the finance charge").

Again, these conditions are met. While this fee was charged to all customers who financed their vehicle purchase through Guaranteed Auto, it was not charged

to any cash customers.  (SMF ¶¶ 15-16.)  This fee was mandatory, as Guaranteed Auto never waived it for any customers obtaining financing.  (GA Deposition, p. 40:7-9 ("Q:  Okay.  Did you ever waive the [$3,350.00] fee if the customer asked you to waive it?  A:  No."; SMF ¶ 32.)

> 2.  The Unidentified Fee does not fall under any of the regulatory exemptions to the finance charge.

As the $3,350.00 fee meets the baseline definition for a finance charge, it can only be omitted from the finance charge if it falls within one of TILA's specific exemptions.  12 C.F.R. § 226.4 (c)-(e).  Because TILA is a remedial statute to be liberally interpreted in favor of consumers, these exemptions must be narrowly construed.  Buford v. American Fin. Co., 333 F. Supp. 1243, 1247 (N.D. Ga. 1971).  It is clear that the fee does not fit one of the statutory exemptions.

As a threshold matter, Guaranteed Auto cannot invoke any finance charge exclusion in this case as it provided no written disclosure regarding the purpose of the fee.  See Meyers v. Clearview Dodge Sales, 539 F.2d 511, 518-519 (Former 5th Cir. 1976) (certain charges not made to cash customers must be itemized and disclosed "in order that they may be excluded from the finance charge").  This lack of identification in and of itself violates other TILA disclosures rules, see 12 C.F.R. § 226.18(c) (requiring an itemization of the amount financed, including the identity of the recipient of those charges), and frustrates TILA's underlying policy

6

that consumers have informed use of their credit. Because it did not disclose the purpose of this fee, Guaranteed Auto is not entitled to receive protection under the narrow statutory exemptions.

Even if the lack of disclosure were not dispositive, Guaranteed Auto would still not be able to receive protection under these exemptions because it has not provided a coherent explanation for the fee.[2] In deposition testimony, Guaranteed Auto stated that the fee covered several services: (1) a guarantee that no deficiency would be pursued; (2) use of a rental or loaner car if repairs are needed; (3) "optional" credit reporting of the customer's loan status; (4) the option to finance any needed repairs (though Mr. Jordan would still bear those costs); (5) a GPS system used for repossession; and (6) unspecified profits. (GA Deposition, pp. 29:24-25, 30:1-21 (outlining components); p. 58:2-11 (explaining GPS's repossession purpose); pp. 46:24-25; 47:1 ("there's profit in there").)

Each of these items constitutes a finance charge. At best, item (1) is debt cancellation insurance, which equates to a finance charge because it is required by the creditor. See 12 C.F.R. § 226.4(d). Further, the rental fees and bundled service

---

[2] In discovery, Guaranteed Auto initially claimed the fee was an "application fee," (Ex. F, Def's Admissions ¶ 17), but later disclaimed that response in its entirety. (GA Deposition, p. 37:18-22). Any application fee in this case, however, would still be a finance charge because Guaranteed Auto did not charge it to all applicants for credit, regardless of whether they were approved, as required by 12 C.F.R. § 226.4(c)(1). (See GA Deposition, pp. 41:12-13; 42:3-5.)

packages that are sold as part of the credit transaction, items (2) through (4), are also finance charges. See Pendleton v. American Title Brokers, Inc., 754 F. Supp. 860, 863-64 (S.D. Ala. 1991) (weekly rental fee for car is a finance charge); Random v. S&S Food Center, Inc. of Florida, 700 F.2d 670, 674 (11th Cir. 1983) (required service agreement was a finance charge) (overruled on other grounds). Item (5) is a finance charge because the GPS device protects the creditor's collateral in the event of default. See 15 U.S.C. § 1605(a)(5) (finance charge includes any "other charge for any guarantee . . . protecting the creditor against the obligor's default or other credit loss"). Finally, item (6), additional profit, is the dealer simply extracting additional money from the credit transaction.

None of the above items fit the regulatory exemptions to finance charges. See 12 C.F.R. § 226.4(c)-(e). On the contrary, most of them are specific examples of finance charges. See 12 C.F.R. § 226.4(b).

### 3. The finance charge is understated by $3,350.00.

For the foregoing reasons, the entirety of the $3,350.00 is a finance charge. If the amount financed for a transaction exceeds $1,000.00, as is the case here (SMF ¶¶ 5, 12), then the disclosed finance charge must be no more than $10.00 above or below the actual finance charge. 12 C.F.R. § 226.18(d)(2). Guaranteed Auto exceeded these thresholds, and thus violated TILA, because the finance

charge was disclosed as $3,350.62 when it was really $6,700.62 (the disclosed $3,350.62 plus the undisclosed $3,350.00 fee).

### B. Guaranteed Auto Overstated the Amount Financed.

Second, Guaranteed Auto violated TILA by including the unidentified $3,350.00 fee in the amount financed. This resulted in a deceptive TILA disclosure statement that grossly misrepresented the true cost of the transaction to Mr. Jordan.

TILA requires creditors to disclose the "amount financed," or "the amount of credit provided to [the consumer] or on [the consumer's] behalf" for credit transactions.  12 C.F.R. § 226.18(b).  Failing to do so accurately is a violation of TILA, and results in a claim for damages. 15 U.S.C. §1640(a).  The amount financed is calculated by (1) determining the principal loan amount or the cash price (subtracting any down payment); (2) adding any other amounts that are not financed by the creditor and are not part of the finance charge; and (3) subtracting any prepaid finance charge.  12 C.F.R. § 226.18(b)(1)-(3).

Guaranteed Auto's calculations regarding the amount financed are disclosed on the Bill of Sale.  (Ex. C.)  The Bill of Sale identifies the "Balance to be Financed" as $8,271.93.  (Id.)  This figure was reached by including the Unidentified Fee in the Amount Financed, per the Bill of Sale.  (SMF ¶ 12, 19.)

However, as described above, the Unidentified Fee is a finance charge. Thus, by including it in the amount financed, Guaranteed Auto overstated that amount. See 12 C.F.R. § 226.18(b)(2) (finance charges must be excluded from amount financed). Accordingly, the correct amount financed for the transaction is $4,921.93 ($8,271.93 less $3,350.00).

## C. By Disclosing the APR As 28%, When It Was Actually 80%, Guaranteed Auto Grossly Understated the APR.

Because Guaranteed Auto failed to properly disclose the finance charge and the amount financed, it provided Mr. Jordan with a wildly inaccurate annual percentage rate (APR).

The APR "is a measure of the cost of credit, expressed as a yearly rate." 12 C.F.R. § 226.22(a)(1). The measure is so important that TILA requires it, along with the finance charge, to be the most conspicuous disclosure made to the consumer. See 15 U.S.C. § 1632(a). Furthermore, the accuracy of the APR must be precise, as it is only considered accurate if it is within "1/8 of 1 percentage point" of an approved calculation method. 12 C.F.R. § 226.22(a)(2).

Because calculating the APR can be cumbersome with hand calculations, the Office of the Comptroller of Currency (OCC) has created a program, called

APRWIN, to run those calculations.[3]  Because this government-provided calculator is considered reliable, the Court can take judicial notice of its results.  See Maldonado v. AMS Servicing LLC, 2012 U.S. Dist. LEXIS 8037, *15-16 n. 9 (D. Mass. Jan. 24, 2012).

According to the APRWIN program, the APR on this transaction is 80.1286%.[4]  Guaranteed Auto disclosed the APR as 28.00%, 52.128 percentage points below the actual APR.  This APR far exceeds the "1/8 of 1 percentage point" tolerance for APR calculations.  Guaranteed Auto's massive underdisclosure of the APR therefore violates TILA.

### D. Plaintiff is Entitled to Statutory and Actual Damages as a Result of Guaranteed Auto's TILA Violations.

Mr. Jordan is entitled to actual and statutory damages, along with costs and attorneys' fees[5] as a result of Guaranteed Auto's violations of TILA.  15 U.S.C. § 1640(a); Gilkey v. Central Clearing Co., 202 F.R.D. 515 (E.D. Mich. 2001) (strict liability for inaccurate disclosures of finance charge and APR).

---

[3] The APRWIN program is publicly available from the OCC website.  See http://www.occ.gov/tools-forms/tools/compliance-bsa/aprwin-software.html (last accessed Aug. 22, 2014).
[4] The steps and calculations for this result are attached in an Affidavit of Counsel. See Ex. K – L (explaining calculations with accompanying screen shots).
[5] Mr. Jordan will submit his request for attorneys' fees and costs, if appropriate, after a ruling on the merits.

Specifically, Mr. Jordan is entitled to statutory damages of twice the finance charge, or $2,000.00, whichever is less. 15 U.S.C. § 1640(a)(2)(A)(ii). Because twice the finance charge of $6,700.62 is well over the statutory cap of $2,000.00, he is entitled to $2,000.00 in statutory damages.

In addition to statutory damages, consumers may recover actual damages when there is a "causal link between the financing institution's noncompliance with TILA requirements and [his] damages." Barlow v. Evans, 992 F. Supp. 1299, 1309-10 (M.D. Ala. 1997). The TILA violation in this case is so substantial that Mr. Jordan would have avoided the transaction entirely if the APR was shown as over 80%, as opposed to 28%. (SMF ¶ 22.) Guaranteed Auto concedes that the industry standard for buy-here, pay-here transactions is 28% (GA Deposition, p. 19:2-15; SMF ¶ 41), so Mr. Jordan could easily have gone elsewhere for financing. Moreover, the cost of his credit was important to him because he wanted to have the ability to pay off the loan early. (Jordan Aff. ¶ 17.)

Mr. Jordan's damages are substantial. First, Mr. Jordan paid $1,400.00 through his down payment and monthly payments that he would not have otherwise paid if he had been aware of the true cost of his transaction. (SMF ¶¶ 23, 25.) Second, he traded in a vehicle worth at least $3,500.00, by Guaranteed Auto's calculation. (SMF ¶ 7.) Thus, Mr. Jordan suffered $4,900.00 in actual

damages ($1,400.00 in payments plus his vehicle worth $3,500.00) as a result of Guaranteed Auto's conduct. Mr. Jordan's total damages are therefore $6,900.00 ($4,900.00 in actual damages plus $2,000.00 in statutory damages).

II. GUARANTEED AUTO VIOLATED THE MOTOR VEHICLE SALES FINANCE ACT BY CHARGING ILLEGAL INTEREST RATES, AND NOT PROVIDING REQUIRED NOTICES.

Not only were Guaranteed Auto's true finance charges hidden from Mr. Jordan, but they also violated the limits of the Georgia Motor Vehicle Sales Finance Act (MVSFA). Guaranteed Auto further violated the MVSFA by not providing adequate post-repossession notice of Mr. Jordan's rights.[6] These violations automatically protect the consumer from further charges, O.C.G.A. §§ 10-1-36(a), 10-1-38(b), and because the charges were intentional, entitle him to additional statutory damages, O.C.G.A. § 10-1-38(c).

A. Defendant's Contract Charged Interest Rates to Mr. Jordan Beyond Those Allowed Under the MVSFA.

The finance charge imposed on Mr. Jordan by Defendant, which amounts to an APR of 80.1286%, far exceeds the statutory cap for car sales.

"The add-on interest rate authorized by the Motor Vehicle Sales Finance Act is the ceiling on the interest which may be charged for financing an automobile."

---

[6] The MVSFA covers all dealer-financed purchases of new and used automobiles. See O.C.G.A. §§ 10-1-31(a)(4), (9)-(11).

In re McMichen, 23 B.R. 497, 498 (Bankr. N.D. Ga. 1982). The limit for a used motor vehicle of "a year model more than four years prior to the year in which the sale is made [is] $17.00 per $100.00 per year." O.C.G.A. § 10-1-33(a). This finance charge is computed based upon the "unpaid balance," which for our purposes is the same as the TILA amount financed defined above.[7]

The Unidentified Fee in this case must be excluded from the "unpaid balance." First, the MVSFA incorporates TILA's definitions. O.C.G.A. § 10-1-33(b). Thus, for the same reasons the Unidentified Fee cannot be part of the amount financed under TILA, it cannot be part of the "unpaid balance" under the MVSFA. Second, it is well-established that any unidentified fees are to be excluded from the "unpaid balance" for MVSFA purposes. See Ford Motor Credit Co. v. Spann, 153 Ga. App. 535, 537 (1980) (an unidentified fee of $25 not sufficiently itemized to be included in the "unpaid balance"). Thus, the "unpaid balance" in Mr. Jordan's transaction is $4,921.93.

---

[7] The MVSFA uses the term "unpaid balance" as defined in the original promulgation of Regulation Z. O.C.G.A. § 10-1-33(b). The only difference between this term "unpaid balance" and the amount financed is the deduction of certain prepaid finance and deposit charges that are not applicable here. See 34 Fed. Reg. 2002, 2008 (Feb. 11, 1969) (to be codified at 12 C.F.R. § 226.8(c)(5)-(7)). Thus, for our purposes, the term "unpaid balance" is the same as the TILA amount financed described above.

Given the "unpaid balance," the maximum finance charge permitted under this contract is $2,148.72.[8]  This ceiling can easily be calculated by tracking the statutory language: "$17.00 per $100.00 per year."   One can thus take the following steps to calculate the maximum finance charge for Mr. Jordan:

(1) "$17.00 per $100.00" is the same as 17%.

(2) The "unpaid balance" is $4,921.93, the actual "amount financed."

(3) 17% of the "unpaid balance" is $836.73, the amount of interest that Defendant may charge per year on this transaction (i.e., 17% per year).

(4) The transaction was consummated on November 11, 2012, with a final payment due on June 7, 2015.  Thus, the length of the transaction is 2.568 years.

(5) The finance charge ceiling on the life of this contract is $2,148.72 ($836.73 per year x 2.568 years). (SMF ¶ 10.)

As described above, Defendant imposed a finance charge of $6,700.62 on Mr. Jordan's transaction.  This charge is not a minor or technical deviation from the MVSFA; it is more than triple the amount allowed under Georgia law.

---

[8] One cannot simply use the APR to determine whether a seller has violated the MVSFA interest rate cap because the APR is calculated differently than the add-on interest referenced in the MVSFA.  See Sidney L. Moore, Jr., The Computation of Finance Charges in Georgia Consumer Credit Contracts, 30 Mercer L. Rev. 281, 285-288 (1978) (describing different interest rate calculations in consumer credit contracts).

The undisputed facts show this violation was willful. In 2012 and 2013, Defendant charged this Unidentified Fee to over 146 credit customers as a condition of the extension of credit, but not to any cash customers. (SMF ¶¶15, 31, 33, 42.) It refused to waive that fee for any borrowers. (SMF ¶31.) When drafting the financing documents, the salesperson manually enters this fee into the computer each time, but does not type an explanation or identify its purpose, despite its substantial nature. (SMF ¶ 33.) After consummating the transaction, Mr. Jordan was told that it was a finance charge. (SMF ¶ 19.) Finally, the Unidentified Fee is a source of profits for Defendant from its credit customers. (GA Deposition, p. 47:1-2.) The imposition of the Unidentified Fee is no mistake or accident on the part of the dealer. It is an additional charge imposed on its customers that is willful.

The effect of this interest rate violation is two-fold. First, Defendant is barred from recovering any finance charge, delinquency, or collection charge on the contract. O.C.G.A. § 10-1-38(b). Second, because the violation was willful, Mr. Jordan is entitled to statutory damages equal to double the finance charge. See Stokes v. Fidelity Acceptance Corp., 644 F.2d 355, 356 (Former 5th Cir. 1981); O.C.G.A. § 10-1-38(c). Thus, Mr. Jordan seeks a declaratory judgment that Defendant cannot recover any finance charges, delinquency, or collection charges

from Mr. Jordan, as well as statutory damages of $13,401.24 (the finance charge of $6,700.12, multiplied by two).

### B. Defendant Refused to Provide Mr. Jordan With the Required Post-Repossession Notices.

The MVSFA also contains requirements in the event of a customer's default. "When any motor vehicle has been repossessed after default," the seller must send the buyer proper notice of the seller's intentions and the buyer's rights, including his "rights of redemption." O.C.G.A. § 10-1-36(a).

It is undisputed that the MVSFA notice was not mailed in this case. (SMF ¶ 27.) Guaranteed Auto openly admits, as a matter of course, that it does not send these notices (ostensibly because it does not seek deficiency balances). (SMF ¶ 28.) Instead, Guaranteed Auto chooses not to inform hundreds of consumers, including Mr. Jordan, of their redemption rights as required under the MVSFA.

The effect of this notice violation is also two-fold. First, Guaranteed Auto is barred from any deficiency claim against Mr. Jordan on this contract. O.C.G.A. § 10-1-36(a). Second, even if the interest rate violation above did not entitle Mr. Jordan to statutory damages, this intentional notice violation does. See O.C.G.A. § 10-1-38(c). Thus, Mr. Jordan seeks a declaratory judgment that Defendant cannot

seek a deficiency claim against him, as well as the above-calculated statutory damages of $13,401.24, if MVSFA statutory damages are not otherwise awarded.

### III. GUARANTEED AUTO'S REFUSAL TO PROVIDE POST-REPOSSESION NOTICES ALSO VIOLATES ARTICLE 9 OF THE GEORGIA COMMERCIAL CODE.

Georgia's codification of Article 9 of the Uniform Commercial Code requires proper notification to the debtor after secured collateral has been repossessed. See O.C.G.A. § 11-6-611. Article 9 notice requirements are cumulative of those found in the MVSFA. See Bryant Int'l v. Crane, 188 Ga. App. 736, 736-737 (1988). As in the MVSFA, a key purposes of this notice is to give "the debtor the opportunity to exercise its redemption rights." See Cessna Finance Corp. v. Design Eng. & Constr. Int'l, Inc., 176 Ga. App. 206, 208 (1985); O.C.G.A. § 11-9-614(1)(C) (content requirements of notice); O.C.G.A. § 11-9-623 (right to redeem). A notice lacking any of the required information "is insufficient as a matter of law." U.C.C. § 9-614 (Official notes).

Given the complete absence of notice in this case, Defendant clearly violated the statute. Mr. Jordan's car was repossessed on December 26, 2013. He never received a written notice of his right to redeem the collateral. Guaranteed Auto concedes that it never sent out such notice. (SMF ¶¶ 27-28.)

These notice requirements are so important that Article 9 provides for significant statutory damages for violations. See O.C.G.A. § 11-9-625(c)(2). This provision is "designed to ensure that every noncompliance with the requirements of Part 6 in a consumer-goods transaction results in liability, regardless of any injury that may have resulted." U.C.C. § 9-625 (Official notes) (emphasis added). No actual damages need be proven in order to recover these statutory damages. See e.g., Atl. Coast Fed. Credit Union v. Delk, 241 Ga. App. 589, 591 (1999). Furthermore, consumers have recovered these damages even in cases where no deficiency is sought, Ogletree v. Brokers South, Inc., 192 Ga. App. 53, 56 (1989), or when a deficiency is not otherwise recoverable, see Davis v. Adel Banking Co., 175 Ga. App. 828 (1985).

Mr. Jordan is entitled summary judgment on his claim for statutory damages in the amount of $7,192.81. Per the statute, this number is calculated based on the "time price differential" (a.k.a., the "finance charge," $6,700.62) plus 10% of the cash price (a.k.a., the "amount financed," $4,921.93). See O.C.G.A. § 11-9-625(c)(2); Ogletree, 192 Ga. App. at 56 (calculating damages).

## IV. GUARANTEED AUTO'S DECEPTIVE ACTS AND PRACTICES VIOLATE THE GEORGIA FAIR BUSINESS PRACTICES ACT.

Mr. Jordan is also entitled to summary judgment on his claims under the Georgia Fair Business Practice Act, O.C.G.A. § 10-1-390 et seq. A claim under the FBPA has "three elements: a violation of the Act or its rules, causation, and injury." Johnson v. GAPVT Motors, 292 Ga. App. 79, 84 (2008); see O.C.G.A. § 10-1-399(a).[9] Each element is met herein, and will be addressed in turn.

### A. Guaranteed Auto Violated the FBPA.

The FBPA broadly prohibits "unfair or deceptive acts or practices in the conduct of consumer transactions." O.C.G.A. § 10-1-393(a). The single sale of an automobile to a consumer by a dealer constitutes a consumer transaction. See Marrale v. Gwinnett Place Ford, 271 Ga. App. 303, 307-308 (2005). Here, Guaranteed Auto committed an unfair and/or deceptive act by blatantly misrepresenting the costs of Mr. Jordan's credit.

Deceptive TILA disclosures violate the FBPA. First, a violation of the Federal Trade Commission (FTC) Act is a violation of the FBPA. See O.C.G.A. § 10-1-391(b); 1st Nationwide Collection Agency v. Werner, 288 Ga. App.454, 459 (2007) (violation of Fair Debt Collection Practices Act results in violation of FTC

---

[9] The FBPA also requires ante-litem notice to the defendant, which was completed by counsel. See O.C.G.A. § 10-1-399(b); (SMF ¶ 43.)

Act, and, therefore, a violation of the FBPA)); Nickens v. Equifax Info Servs., LLC, No. 13-CV-0333, 2013 U.S. Dist. LEXIS 127441 at *13-14 (N.D. Ga., August 5, 2013) (violations of Fair Credit Reporting Act are violations of FTC Act, and, thus, violations of FBPA). Further, it is well-established that TILA violations are violations of the FTC Act. In re Beauty Style Modernizers, Inc., 83 F.T.C. 1761 at *28-29 (Sept. 18, 1972); see also In re Charnita, Inc., 80 F.T.C. 892 at *59-61 (Jan. 11, 1971) (finding violation of FTC act based upon violations of TILA).

Thus, because Guaranteed Auto's deceptive TILA disclosures would be FTC Act violations, they are also FBPA violations. This is especially true here because Guaranteed Auto's acts were not mere technical violations of TILA; they were gross misrepresentations of the cost of credit for a transaction that had a true (and illegal) APR of over 80%.[10] Violations of this kind grievously injure a consumer's ability to effectively shop around for good credit terms. This results in consumers entering into expensive and unaffordable transactions, often culminating in default – as was the case with many of Guaranteed Auto's customers. (GA Deposition,

[10] Chancellor v. Gateway Lincoln-Mercury, 233 Ga. App. 38 (1998) does not hold otherwise. There, the court found that there was no FBPA violation because the transaction was not a consumer transaction and there was no TILA violation. Id. at 43-44. In dicta, the court suggested that "truth in lending" falls outside of the FBPA, except where "expressly covered." Id. First, TILA is expressly covered, through the FBPA's incorporation of the FTC Act. Second, this dicta is not reconcilable with the later-decided 1st Nationwide and other authorities, and should be ignored.

pp. 22:18-25, 23:1.)  This practice not only directly harms consumers, but also erodes confidence in the market and diverts business from legitimate dealerships. Avoiding this scenario is the purpose of the FBPA.

However, even in the absence of an express FTC Act violation, misrepresenting or concealing the cost of credit gives rise to a FBPA violation. Conseco Fin. Servicing Corp. v Hill, 252 Ga. App. 774, 777 (2001) (failing to inform buyer of step-interest rate in their loan, and misrepresenting that monthly payments on mobile-home loan would not rise in the future, could give rise to FBPA violation).  In this matter, Guaranteed Auto misrepresented the true cost of credit to Mr. Jordan by understating the finance charge for the transaction by $3,350.00 and the APR by over 50 percentage points.  This deceptive act violates the core of the FBPA.

### B.    Guaranteed Auto's Actions Caused Mr. Jordan's Injuries.

As shown above, Mr. Jordan would not have entered into the transaction if he had known its true cost.  See Section I.D, supra; (SMF ¶¶ 23-24.)  He relied to his detriment upon Guaranteed Auto's misrepresentations in making his decision to trade in his car and purchase a vehicle from them.  (SMF ¶¶ 22-24)  Guaranteed Auto specifically told Mr. Jordan that the APR for the transaction was 28%, (SMF ¶¶ 17, 18, 22), and all of the documents provided to him reflected the same APR.

(Exs. B,C.) Thus, he relied upon both oral and written misrepresentations, with no reason to doubt either at the time of the transaction. Under these facts, Mr. Jordon satisfies the causation standard under the FBPA. Crown Ford, Inc. v. Crawford, 221 Ga. App. 881, 884 (1996) (granting summary judgment to purchaser of car who was defrauded by false odometer reading, when dealership "raised no specific facts showing [the consumer] did not rely on its representations").

### C. Mr. Jordan Suffered Actual Injuries.

Mr. Jordan was injured as a direct result of Guaranteed Auto's deceptive and unfair acts. He made $1,400.00 in payments that he would not have otherwise made (Jordan Aff. ¶¶ 30, 37), and traded in a paid-off vehicle worth $3,500.00, that he would not have traded in but for Guaranteed Auto's actions. (Jordan Aff. ¶¶ 11, 37.) Accordingly, he suffered $4,900.00 in actual damages.

### D. Because Guaranteed Auto's Actions Were Intentional, They Trigger the Statutory Trebling of Damages.

The FBPA mandates an award of statutory treble damages when the purported conduct was intentional. O.C.G.A. § 10-1-399(c). Here, the circumstances for awarding treble damages are met.

Under the FBPA, a violation is intentional when it is "a volitional act constituting an unfair or deceptive act or practice conjoined with culpable

knowledge of the nature (but not necessarily the illegality) of the act." <u>Miles Rich Chrysler v. Mass</u>, 210 Ga. App. 693, 697 (1991) (verdict for plaintiff who was promised a van that was never delivered). Thus, if an act is committed intentionally, and that act is unfair or deceptive, treble damages are mandatory.

Guaranteed Auto committed a volitional act when it, in keeping with its business practices, charged Mr. Jordan a $3,350.00 unidentified fee and provided inaccurate disclosures. Its salespeople manually entered the fee into the transaction for all credit purchases. (SMF ¶ 33.) In addition, Guaranteed Auto knew that at least some portion of the $3,350.00 charge was a finance charge, because it was additional "profit" from the credit sale. (GA Deposition, p. 47:1.) There is no credible argument that it did not intend to charge the fee and omit it from the finance charge. That is all that is necessary to meet the FBPA's intent standard.

Finally, Guaranteed Auto imposed this fee time and time again. Attached to this Motion and Brief are close to 150 used car transactions provided by Guaranteed Auto, all of which include an unidentified $3,350.00 fee. Guaranteed Auto stipulated that (1) each financed transaction entered into in 2012 and 2013 included this fee, (2) that this fee was never included in the finance charge, but always included in the amount financed, and (3) that the APR was always

calculated upon this basis. (SMF ¶¶ 38-40.) Guaranteed Auto thus charged $489,100.00 in unidentified, undisclosed finance charges for these 146 transactions alone (146 multiplied by 3,350 = 489,100). Guaranteed Auto estimated that it charged the fee to an estimated 625 customers in 2012 and 2013. (GA Deposition p. 41:1-8.) It thus charged (and profited from) $2,093,750.00 in illegal finance charges over a two-year period (625 transactions multiplied by 3,350.00). Guaranteed Auto's motive and intent in charging its customers the $3,350.00 fee and concealing it from the finance charge is plain – to fraudulently extract additional profit from its customers.

## CONCLUSION

The undisputed evidence shows that Mr. Jordan is entitled to partial summary judgment on his claims, and he requests that it be granted in his favor.[11]

This 25th day of August, 2014.

*/s/ Jon Erik Heath*
J. Erik Heath
Ga. Bar No. 940564
jeheath@atlantalegalaid.org
Elaine Poon
Ga. Bar No. 321308
elpoon@atlantalegalaid.org

---

[11] Mr. Jordan respectfully requests that his claims for punitive damages be reserved, pending a ruling on the merits.

John R. Bartholomew IV
Ga. Bar No. 257089
jrbartholomew@atlantalegalaid.org
Donald M. Coleman
Ga. Bar No. 177450
dmcoleman@atlantalegalaid.org

ATLANTA LEGAL AID SOCIETY, INC.
151 Spring Street NW
Atlanta, GA  30303
(404) 524-5811 (phone)
(404) 614-3997 (fax)

*Attorneys for Plaintiff*

<u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies that the foregoing has been prepared in

Times New Roman (14 point) font, as approved by the Court in L.R. 5.1.B.

*/s/ Jon Erik Heath*
J. Erik Heath
Ga. Bar. No. 940564
Attorney for Plaintiff