IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| CHARLES E. JORDAN, | : | CIVIL ACTION NO. |
| | : | 1:13-CV-3703-WBH-JSA |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **FINAL REPORT AND** |
| GUARANTEED AUTO, INC., | : | **RECOMMENDATION ON A** |
| | : | **MOTION FOR DEFAULT** |
| Defendant. | : | **JUDGMENT** |

**I. FACTS**

Plaintiff filed the instant lawsuit on November 8, 2013, alleging violations of the Truth in Lending Act ("TILA"), Georgia Motor Vehicle Sales Finance Act ("GMVSFA"), and the Georgia Fair Business Practices Act ("FBPA"). The allegations arose from a retail installment contract between Plaintiff and Defendant for the purchase of a vehicle.

The parties engaged in the discovery process, and on August 21, 2014, Defendant's counsel filed a consent motion to withdraw, which the Court granted. On August 25, 2014, Plaintiff filed a Motion for Partial Summary Judgment [33], and on August 27, 2014, the Court ordered Defendant Guaranteed Auto, Inc. to obtain new counsel within 21 days because a corporation cannot represent itself. Defendant failed to do so, and on September 29, 2014, the Court directed the Clerk to enter a default against Defendant, while also advising Plaintiff that if he sought to obtain a default

judgment, he would need to file a motion for default judgment within 21 days. The Court also informed Defendant that it could move to set aside the default pursuant to FED. R. CIV. P. 55(c). Thereafter, on October 20, 2014, Plaintiff filed a Motion for Default Judgment [37]. On November 24, 2014, a hearing was held before the undersigned for the purpose of assessing damages on Plaintiff's claim of Defendant's deceptively charging interest rates above 92.87%, in violation of TILA, the GMVSFA, and the FBPA.

As the docket reflects, all orders and notices relevant to the default judgment issue have been mailed to Defendant's last disclosed mailing address, and Plaintiff certifies that he has served all papers on Defendant by mail at that address. To date, Defendant has made no response to the Court's orders, no counsel has appeared as ordered, no opposition has been filed to the motion for default judgment, and no one appeared for Defendant at the evidentiary hearing.

**II.   DISCUSSION**

    A.   *Motion for Default Judgment*

        1.   Default Judgment is Appropriate

Entry of default judgment does not automatically follow from an entry of default, and rather is committed to the discretion of the Court. *Hamm v. Dekalb Cnty.*, 774 F.2d 1567, 1576 (11th Cir.1985). Among other things, the Court "must ensure

that the well-pleaded allegations in the complaint, which are taken as true due to the default, actually state a substantive cause of action and that there is a substantive, sufficient basis in the pleadings for the particular relief sought." *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007). As to requests for damages, the Court may conduct evidentiary hearings, although "no such hearing is required where all essential evidence is already of record." *S.E.C. v. Smyth*, 420 F.3d 1225, 1232 n.13 (11th Cir. 2005).

The Court is satisfied that default judgment is appropriate here. First, the Court finds that Plaintiff's claims are well supported. The Complaint alleges facts showing that Defendant misrepresented, and indeed hid, several thousand dollars worth of "finance" charges in a used car sale to Plaintiff. Complaint [1-1] ¶¶ 7-27. While Defendant issued required disclosures under TILA, these disclosures only obfuscated the true amount of the finance charge being assessed. *See id.* ¶¶ 10, 14, 27. The disclosures stated that Plaintiff was financing a purchase of $8,271.93, and on top of that was being charged $3,350.62 as a "finance charge." *Id.* ¶ 15. However, the $8,271.93 sales amount already included a $3,350 unidentified charge, which after the transaction the dealership also stated was a separate "finance charge." *Id.* ¶ 17. Thus, the required TILA disclosures actually understated, and hid, the true amount of the finance charge being assessed to Plaintiff, which was over $6,700, more than

3

double what had been disclosed, all for an eight-year-old vehicle being sold for less than $9,000. The Complaint further alleges that Plaintiff relied on the false TILA disclosure, in that he would not have entered the purchase contract had he been aware of the true charges. *Id.* ¶ 29. This sufficiently alleges a violation of the Truth in Lending Act, 15 U.S.C. § 1640.[1]

The Complaint also adequately alleges that the finance charge exceeded what was permissible under the Georgia Motor Vehicle Sales Finance Act, O.C.G.A. § 10-1-38(c), which for this transaction was less than $2,000. *See id.* ¶¶ 31-38. Plaintiff also alleges facts suggesting that this violation was willful, as Defendant took steps to conceal the true amount of the finance charge to Plaintiff, and also engaged in this same tactic with other customers purchasing automobiles on credit. *See id.* ¶¶ 27, 41, 46. The Court also finds that the allegations in Counts Three and

---

[1] TILA is designed "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a). Together with its implementing Regulation Z, and under specified circumstances, TILA requires disclosure by the "creditor" of, *inter alia*, the "'amount financed,'" *id.* § 1638(a)(2)(A), the "'finance charge,'" *id.* § 1638(a)(3), and the "number, amount, and due dates or period of payments scheduled to repay the total of payments," *id.* § 1638(a)(6), as well as rescission rights, *see id.* § 1635; 12 C.F.R. § 226.23(b)(1). "[A]ny creditor who fails to comply with any requirement imposed under this part . . . with respect to any person is liable to such person." 15 U.S.C. § 1640(a).

Four sufficiently allege violations of the Georgia Commercial Code, and Georgia Fair Business Practices Act, respectively.

Plaintiff has also filed a Motion for Partial Summary Judgment, supported by evidence, supporting his claims of liability as to the above claims.

Second, the Court finds that Plaintiff would be prejudiced absent a default judgment. This is not a case where default is being considered as a sanction for misconduct against a Defendant who is otherwise participating in the case. Rather, Defendant here has apparently withdrawn from participation in this case and now refuses to properly appear. Resolution of Plaintiff's claims for monetary damages requires resort to default judgment.[2]

Third, there is no excusable neglect apparent on this record, and Defendant has not articulated any despite being given numerous chances to respond, to move to set aside default, to appear at the evidentiary hearing, etc. Defendant has been served by the Court and Plaintiff with all relevant motions, orders and notices and has taken no action whatsoever.

---

[2] As an alternative, the Court could grant Plaintiff's Motion for Partial Summary Judgment as unopposed, considering all facts asserted by Plaintiff to be true since there is no opposition filed. This would be functionally the same as a default judgment and, in any event, would not avoid resort to Rule 55(b). Plaintiff's claims do not lend themselves to summary award of damages, and so a default judgment hearing would be necessary to determine damages even after grant of summary judgment as to liability.

### 2. The Judgment Amount

In his Motion for Default Judgment [37], Plaintiff seeks: (1) $2,000 in statutory damages under TILA; (2) $13,401.24 in statutory damages under the MVSFA; (3) $7,192.81 in statutory damages under the Georgia Commercial Code ("GCC"); and (4) declaratory relief that Defendant is barred from recovering any finance charge, delinquency, or collection charge on the contract, or from seeking a deficiency claim against Plaintiff. Plaintiff also seeks actual damages, trebled on the basis of a willful violation, and punitive damages and attorneys' fees, as to which the Court heard evidence during the hearing. Defendant – who as of the date of this Order has yet to obtain counsel – did not respond to Plaintiff's Motion or appear at the hearing.

Plaintiff's damages request has been made more confusing by the fact that the amounts Plaintiff has requested have shifted during the course of this motion practice. Plaintiff's Motion for Default Judgment requested $7,192.81 in statutory damages under the GCC. *See* Motion for Default Judgment [37] at 5. However, at the hearing, Plaintiff took the position that the GCC damages amount is $7,589.11. Moreover, Plaintiff's Motion for Partial Summary Judgment [33], which Plaintiff generally incorporates in its Motion for Default Judgment, identifies his actual damages at $4,900. *See* Motion for Partial Summary Judgment [33-1] ¶ 23. This amount includes

the down payment he made, other payments to Defendant, and the value of his traded-in vehicle. At the hearing, however, Plaintiff took the position that his actual damages were higher, principally by using a higher value for the traded-in vehicle.

Specifically, during the hearing, Plaintiff provided a "Summary of Damages," in which he replaced the $7,192.81 in statutory damages under the GCC with $7,589.11 pursuant to the Uniform Commercial Code[3]. He also sought treble damages of $62,810.70 under the FBPA, punitive damages of $150,000, and $3,350 in exemplary damages. Thus, the sum of Plaintiff's requested damages totals $247,566.05.

After hearing testimony from Plaintiff, the undersigned concludes that Plaintiff suffered a total of actual damages in the amount of $4,900. This sum is calculated from: (1) $1,000 in Plaintiff's down payment to Defendant; (2) $3,500 as the value of Plaintiff's traded-in vehicle; and (3) $400 in Plaintiff's payments to Defendant for the vehicle. The Court finds these damages to be appropriate based on Plaintiff's statement that he would not have engaged in the transaction at all, including by trading in his car, had the finance charge been disclosed. The Court notes that Defendant repossessed the vehicle sold to Plaintiff shortly after the transaction, *see*

---

[3]Plaintiff, however, cites to the GCC, O.C.G.A. § 11-9-625, in his Summary of Damages.

Complaint ¶¶ 7, 21, and thus the result of the transaction was effectively that Plaintiff had no vehicle at all. Thus, the undersigned **RECOMMENDS** that Plaintiff be awarded the amount of $4,900 in actual damages. To the extent that this figure is lower than what Plaintiff sought at the hearing, the Court declines to credit Plaintiff's increased claim for the value of the trade-in, which exceeds the position Plaintiff took in his summary judgment motion.

With regard to statutory damages, pursuant to TILA, Plaintiff is entitled to the lesser amount of either two times the finance charge or $2,000. *See* 15 U.S.C. § 1640(a)(2)(A). Here, the finance charge was $3,350.62, so Plaintiff can obtain $2,000. *See* Motion for Partial Summary Judgment [33-1] at 12. Pursuant to the MVSFA, Plaintiff can recover "double the time price differential." *See* O.C.G.A. § 10-1-38(c). Here, the time price differential is $3,350.62, which was disclosed as a finance charge in the contract, plus the $3,350 unidentified fee that was charged only to those who purchased vehicles on credit, for a total of $6,700.62. *See* Motion for Partial Summary Judgment [33-2] at 4. Thus, Plaintiff can recover twice the amount of $6,700.62, which equals $13,401.24. Pursuant to the GCC, Plaintiff can recover "the time price differential plus 10 percent of the cash price." O.C.G.A. § 11-9-625(c)(2). As noted above, the time price differential is $6,700.62. Ten percent of the purchase price of the vehicle – $8,884.93 – is $888.49. *See* Motion for

Partial Summary Judgment [33-1] at 2. Thus, pursuant to the GCC, Plaintiff can recover $6,700.62 plus $888.49, which equals $7,589.11. Accordingly, the undersigned **RECOMMENDS** that Plaintiff be awarded the amount of $2,000 in TILA statutory damages, $13,401.24 in MVSFA damages, and $7,589.11 under the GCC.

Plaintiff alleges that, because Defendant's conduct was intentional, Plaintiff is entitled to a statutory trebling of damages under the FBPA. *See* Motion for Partial Summary Judgment [33-1] at 23; *see also* O.C.G.A. § 10-1-399(c) ("a court shall award three times actual damages for an intentional violation" of the FBPA). "The intentional violation as contemplated by the FBPA is a volitional act constituting an unfair or deceptive act or practice conjoined with culpable knowledge of the nature (but not necessarily the illegality) of the act." *Colonial Lincoln-Mercury Sales, Inc. v. Molina*, 262 S.E.2d 820, 823-24 (Ga. App. 1979).

Here, Defendant committed an intentional violation when it charged Plaintiff a $3,350 unidentified fee that it did not disclose to Plaintiff. Moreover, its sales associates manually charged this unidentified fee to all customers with credit transactions, and Plaintiff has submitted records showing that Defendant charged over 100 customers a total of over $400,000 in unidentified finance charges in less than two years. *See* Exh. E [40-5]. Thus, pursuant to O.C.G.A. § 10-1-399(c), Plaintiff is

9

entitled to a statutory trebling of his actual damages of $4,900, which equals $14,700. *See Regency Nissan, Inc. v. Taylor*, 391 S.E.2d 467, 471 (Ga. App. 1990) ("[I]n accordance with the statutory requirements of the FBPA, the measure of damages to be applied for an FBPA violation is that of actual injury suffered."). Accordingly, the undersigned **RECOMMENDS** that, pursuant to the FBPA, Plaintiff be awarded the amount of $14,700 as treble his actual damages.

Georgia law provides that "[p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1(b). Willful conduct is comprised of "an actual intention to do harm or inflict injury," whereas wanton conduct is "reckless" or "charged with indifference to the consequences." *Hendon v. DeKalb Cnty.*, 417 S.E.2d 705, 712 (Ga. App. 1992). "Malice may be inferred if defendant's acts were wanton or were done with a reckless disregard for or conscious indifference to the rights of the plaintiff." *Willis v. Brassell*, 469 S.E.2d 733, 738 (Ga. App. 1996) (internal quotation marks omitted). "Under Georgia law, the purpose of punitive damages . . . is not to compensate but rather to punish and deter." *Turpeau v. Fid. Fin. Servs., Inc.*, 936 F. Supp. 975, 979 (N.D. Ga. 1996) (*citing* O.C.G.A.

§ 51-12-5.1). A violation of the FBPA can constitute a predicate for an award of punitive damages. *See Neal Pope, Inc. v. Garlington*, 537 S.E.2d 179, 183 (Ga. App. 2000); O.C.G.A. § 10-1-399(a) ("exemplary damages shall be awarded only in cases of intentional violation"); *see also Miles Rich Chrysler-Plymouth, Inc. v. Mass*, 411 S.E.2d 901, 906 (Ga. App. 1991) (when a Defendant acts intentionally to violate the FBPA, "exemplary damages are statutorily authorized").

In assessing whether to impose punitive damages and, if so, how much, the Court is to consider "(1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 418 (2003) (*citing BMW of N. Am. v. Gore*, 517 U.S. 559, 575 (1996)). "The most important indicium of the reasonableness of a punitive damages award is the degree of reprehensibility of the defendant's conduct." *Campbell*, 538 U.S. at 419 (citation and alteration omitted); *see also Bowen v. Bowen Const. Co. v. Fowler*, 593 S.E.2d 668, 672 (Ga. App. 2004).

Here, punitive damages are warranted because Defendant willfully included an unidentified charge of $3,350 to Plaintiff's transaction and to hundreds of other

credit transactions, which led to Defendant's charging over $400,000 in similarly-hidden fees to over 100 customers in less than two years. The conduct involved concealment of the true extent of the finance charge. This not only shows willful misconduct, but also that the violations at issue in this complaint are part of a broader pattern. *See Turpeau*, 936 F. Supp. at 979. Punitive damages are appropriate, therefore, for deterrence purposes, because the actual and statutory damages available based simply on Plaintiff's own transaction would not be sufficient to deter Defendant from the overall pattern of misconduct.

At the same time, Plaintiff's request for $150,000 in punitive damages is excessive. This amount is approximately 30 times the actual loss to Plaintiff. Plaintiff also is already entitled to treble his actual loss by virtue of the intentional violation of the FBPA. While the FBPA authorizes punitive damages in addition to mandating treble damages for intentional violations, *see Conseco Fin. Serv. Corp. v. Hill*, 556 S.E.2d 468, 473 (Ga. App. 2001), the Court must consider the trebling of damages in determining what amount of punitive damages should be awarded in addition. Similarly, the Court also considers that Plaintiff is also separately recovering statutory damages under various statutory schemes for what is essentially the same conduct. Further, although the requested amount reflects less than half of the overall $400,000 in unidentified charges obtained by Defendant during this period, the Court believes

that a smaller amount would be sufficient for deterrence purposes. Finally, the Court is concerned that allowing such a high recovery for one plaintiff, so far in excess of his actual loss, could potentially exhaust the ability of other alleged victims to recover their actual losses.

Nevertheless, Defendant's actions in charging an unidentified and concealed finance fee – significantly in excess of what is permitted by Georgia law – in well over 100 cases, is egregious. The Court also considers that this case is part of a pattern of numerous violations, each one of which may result in a small loss, but which aggregate to a large amount (approximately $400,000 in approximately 1.5 years). To adequately deter and punish this repeat conduct, a higher ratio between actual and punitive damages is warranted than in a case where the compensatory damages in and of themselves are already substantial. *See State Farm*, 538 U.S. at 425 (greater ratios may be justified where "a particularly egregious act has resulted in only a small amount of economic damages") (*quoting Gore*, 517 U.S. at 582).

In the end, the undersigned finds that doubling the already-trebled amount of damages would suffice to serve the purposes of punitive damages here. Thus, the

13

Court **RECOMMENDS** that $14,700 in punitive damages be awarded, in addition to the already-trebled $14,700 award of actual damages.[4]

Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Default Judgment [37] be **GRANTED**, and that Plaintiff be awarded a default judgment against Defendant in the total amount of $52,390.35, comprised of $14,700 in trebled actual damages under the FBPA, $14,700 in punitive damages under the FBPA, $2,000 in TILA statutory damages, $13,401.24 in MVSFA statutory damages, and $7,589.11 under the GCC. As part of this judgment, **IT IS RECOMMENDED** that Plaintiff be awarded a declaratory judgment stating that Defendant may not seek a deficiency or collection charge or seek any deficiency balance in connection with the transaction at issue in the instant lawsuit.

    B.    *Motion for Attorney's Fees and Costs*

Plaintiff has submitted a Motion for Attorney's Fees [42], arguing that his attorneys worked on this lawsuit for 130.5 hours and billed at a rate of $250/hour. Plaintiff's attorneys submitted affidavits attesting to their education, professional experience, and the time spent on the instant lawsuit.

---

[4] Plaintiff also separately seeks "exemplary damages," but exemplary damages are generally the same as punitive damages, and Plaintiff cites no authority for the proposition that "exemplary" damages should be imposed separately and apart from punitives and trebled actual damages.

The Eleventh Circuit applies the "lodestar method" in determining the appropriate amount of an award of attorneys' fees. Under this method, the court determines an objective estimate of the value of the lawyers' services for which compensation is sought by multiplying hours reasonably expended on the matter by a reasonable hourly rate. *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). Calculation of this lodestar award may be informed by the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).[5][6] The Court may then enhance or reduce the lodestar amount if exceptional circumstances so require. Chiefly, if the Court finds that the party seeking attorneys' fees achieved only a slight degree of success as compared with what was sought, a downward adjustment may be appropriate. *See Hensley v. Eckhart*, 461 U.S. 424, 434 (1983). An upward adjustment for unusual success will rarely be warranted,

---

[5] The *Johnson* factors include: (1) time and labor required; (2) novelty and difficulty of the issues; (3) skill required to perform the services properly; (4) preclusion of other employment due to acceptance of the case; (5) the customary fee in such cases; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or by the circumstances; (8) the amount at stake and results achieved; (9) experience, reputation and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of professional relationship with the client; and (12) awards in similar cases.

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*) the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

however, because that factor will have already been subsumed in the Court's calculation of the reasonable lodestar amount. *See Pa. v. Del. Valley Citizens' Council*, 478 U.S. 546, 566 (1986).

Here, Plaintiff as the prevailing party qualifies to receive attorneys' fees because a statutory basis exists for the award of such fees in TILA cases, 15 U.S.C. §1640(a)(3), and FBPA cases, O.C.G.A. § 10-1-399(d). Accordingly, the undersigned **RECOMMENDS** that attorneys' fees be granted in this case. The only remaining issue regarding attorneys' fees is the amount to be awarded.

1. Reasonable Hourly Rates

> A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation. The applicant bears the burden of producing satisfactory evidence that the requested rate is in line with prevailing market rates. Satisfactory evidence at a minimum is more than the affidavit of the attorney performing the work . . . satisfactory evidence necessarily must speak to rates actually billed and paid in similar lawsuits.

*Norman*, 836 F.2d at 1299.

Here, Plaintiff's attorneys have submitted five affidavits outlining their educational background and professional qualifications. All of Plaintiff's three attorneys "are experienced consumer rights litigators who have practiced law for at least five years," and they have also taught continuing legal education courses

regarding consumer litigation. *See* Motion for Attorney's Fees [42-1] at 3. They have requested $250 per hour, and they argue that such a rate "is the reasonable market rate for an attorney." *Id.* at 4. In support of this rate, they have submitted the affidavit of former Atlanta Legal Aid Society attorney Gary Leshan who attests that such a rate is reasonable based upon factors such as the attorneys' years of experience and the market rate. *See* Motion for Attorney's Fees [42-6] at 7-8. The undersigned finds that Plaintiff's counsels' rate of $250 per hour is reasonable.

2. Reasonable Hours Expended

Having determined reasonable hourly rates for Plaintiff's counsel, the next step in the application of the requisite lodestar method for ascertaining reasonable attorneys' fees is to review the hours charged to the case and to decide how many were reasonably expended, and accordingly, are recoverable at the proper hourly rate by Plaintiff.

Here, Plaintiff's attorneys attest that they spent 130.5 hours on the instant case. *See* Motion for Attorney's Fees [42] at 4. Plaintiff's attorneys have submitted time sheets and five affidavits revealing the amount of time they each worked on Plaintiff's case. After reviewing the time sheets and affidavits, the undersigned finds that 130.5 hours is a reasonable amount of time spent on this case, especially because

Plaintiff's counsel have carefully accounted for any double-billing potential and have outlined this process in their provided documentation.

3. Costs

Plaintiff requests costs in the amount of $470, which is half the cost paid for a court reporter during Defendant's deposition. *See* Motion for Attorney's Fees [42-1] at 6. Where as here, a federal statute does not provide otherwise, the prevailing party may be reimbursed for litigation costs. *See* FED. R. CIV. P. 54(d)(1).

Here, the undersigned finds that Plaintiff's request for costs is reasonable based on the fact that the costs were used for deposing Defendant. Moreover, because this deposition was to be used in the instant lawsuit and in another, Plaintiff divided the cost in half to be split between both parties.

Thus, **IT IS RECOMMENDED** that Plaintiff be awarded attorneys' fees in the amount of $32,625 and costs in the amount of $470.

### III. CONCLUSION

In sum, the Court **RECOMMENDS** that Plaintiff's Motion for Default Judgment [37] be **GRANTED**, that judgment for Plaintiff be entered in the amount of $52,390.35, which is comprised of the following components: $14,700 in trebled actual damages under the FBPA, $14,700 in punitive damages under the FBPA, $2,000 in TILA statutory damages, $13,401.24 in MVSFA statutory damages, and

$7,589.11 under the GCC; that attorneys' fees and costs be awarded to Plaintiff in the amount of $33,095.

Plaintiff has a Motion for Partial Summary Judgment [33] pending before the Court. However, because the undersigned has **RECOMMENDED** that a default judgment be entered in Plaintiff's favor in this case, the undersigned **FURTHER RECOMMENDS** that this Motion [33] be **DENIED AS MOOT**.

As this is a Final Report and Recommendation, there is nothing further in this action pending before the undersigned. Accordingly, the Clerk is **DIRECTED** to terminate the reference of this matter to the undersigned.

**IT IS SO RECOMMENDED** this 30th day of January, 2015.

_____
JUSTIN S. ANAND
UNITED STATES MAGISTRATE JUDGE